In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00330-CV**

_____

**IN THE INTEREST OF E.G.P.**

_____

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 21-10-13621-CV**

_____

**MEMORANDUM OPINION**

Mother and the alleged Father appeal an order terminating their parental rights to their child, Eric.[1] The trial court found by clear and convincing evidence, statutory grounds exist for termination of their parental rights, and termination of Mother's and Father's rights would be in the best interest of Eric. *See* Tex. Fam. Code. Ann. §§ 161.001(b)(1)(E), (M), (N), (O), (2), 161.002(b)(1). On appeal, Mother and Father raise several issues. We affirm in part and reverse and remand in part.

---

[1] To preserve the privacy of the parties, we refer to the Appellants as "Mother" and "Father" and the child by a pseudonym to protect their identities. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

# I. Background

## A. The Affidavit of Removal

The affidavit of removal stated that Mother and Father had other children who had been removed by the Department in a prior proceeding.[2,3] According to the affidavit, Mother gave birth to Eric in September 2021, and Mother and Father were hiding the child from the Department. The affidavit stated that the Department had concerns that Mother was on methamphetamines and that the parents did not have any baby supplies for Eric. The Department reported that Mother was observed running after Father's vehicle with Eric inside of the vehicle. The child's maternal grandmother reported that she had spoken to both parents, and they insisted that they are "clean[.]" The Department contacted both parents and both denied using drugs despite testing positive for methamphetamine. Mother and Father stated they would comply with drug testing. The Department alleged that Father refused to let the Department enter his residence stating, "he wasn't ready for a home visit." The affidavit quotes the guardian ad litem, alleging the parents have not maintained contact with the guardian ad litem and have not shown up for visitation with their

---

[2] The trial court took judicial notice of its file before commencing with the final trial.

[3] The other children are subject to a separate legal proceeding and are not part of this appeal.

other children. The affidavit concluded by stating the parents have not maintained contact with the Department or completed drug testing.

**B. Trial**

The case was tried in a bench trial on September 7, 2022, and Mother and Father did not appear for trial. Before the commencement of trial, Mother's attorney requested a continuance for Mother to complete her family service plan because Mother's attorney represented that Mother had recently completed a 30-day inpatient rehabilitation treatment. The trial court stated the case was already continued from July 27th to September 7th. In discussing its decision, the trial court noted that Mother did not appear at hearings in February, May, or at an initial setting for final trial in July, although the record shows that Mother did appear for a May 26, 2022, hearing. Mother's counsel argued that Mother's absence was due to her working and being dependent on Father for transportation. The trial court denied the Motion for Continuance.

### 1. Alexis McQueen

Alexis McQueen testified she is the current Department caseworker on this case, but she explained she has only been the caseworker for two months. McQueen stated that the Department requested Eric be removed from his parents because "[t]he child was born during the course of the other case and there were concerns that the parents were using methamphetamines and they had no supplies to care for

3

the child's needs." According to McQueen, Mother signed a family service plan that required her to "complete parenting classes, a psychological evaluation, a drug and alcohol assessment, random drug screenings, maintain contact with the Department, and stable income and housing." Mother completed the parenting class, the drug and alcohol assessment, and attended a 30-day inpatient treatment recommended after her drug and alcohol assessment. McQueen testified that she has never received any information that Mother completed the inpatient program other than an unreadable intake form, and a discharge form provided by Mother's attorney which is illegible. McQueen confirmed Mother also attended weekly follow-up therapy sessions and weekly drug testing as a result of her inpatient therapy. McQueen has not received evidence that Mother failed any of those weekly drug tests. Additionally, Mother has not provided McQueen any proof of her residence.

McQueen testified regarding Mother's and Father's communication with the Department. McQueen believes that the parents are in a relationship and live together. During the time that McQueen has been on the case, Mother has communicated via email, only, she has not asked about the welfare of her child, and she has not visited Eric since May. Father has not maintained contact with the Department, and the only contact the Department has with Father is through Mother. McQueen testified she reached out to both parents three times for visitation and the parents did not attend visitation with Eric.

4

McQueen stated that Father was also ordered per his family service plan to complete "parenting classes, a drug and alcohol assessment, a psychological evaluation, random drug screenings, maintain contact with the Department, and [demonstrate] stable income and housing." Father completed the parenting class, the drug and alcohol assessment, and the psychosocial assessment. Father has not allowed the Department to assess his home. McQueen agreed that it is impossible for the Department to recommend returning Eric to a home that it has never visited.

McQueen testified that Eric has been in foster care since October 2021 and he is happy and "doing great." According to McQueen, the foster parents are meeting all Eric's needs and want to adopt him if the parents' rights are terminated. McQueen stated that Eric has struggled during visitation with Mother, he has no bond with Mother, and he cries during the entire visitation until he is reunited with his foster parents. McQueen testified that for the parents to be able to get their child back, they needed to work toward coming to more visitations and have negative drug screenings. Since she has been the caseworker, Mother and Father have not formed a bond with Eric because they have not attended visitation consistently. She believes it is in Eric's best interest to remain in foster care.

## 2. Rosario Salinas

Rosario Salinas testified she is a supervisor for CASA and was employed by the Department for two years prior to working for CASA. During her employment

5

with the Department, she was a caseworker on Mother's and Father's case. Salinas stopped working for the Department in July. She testified that the parents had a case with the Department when Eric was born, resulting in Eric's removal. According to Salinas, the Department had concerns about the parents' substance abuse, lack of stable housing, and employment.

She confirmed that Mother completed several requirements of her family service plan, but stated Mother failed to maintain contact with the Department, failed to maintain stable housing, failed to appear for drug testing, and failed to provide proof of employment. Salinas testified the last drug test Mother appeared for was a urinalysis that was negative. She stated Mother's and Father's visitation was "sporadic[.]" Salinas would supervise the visits and described Eric as upset and crying "a lot." Salinas also confirmed there were times she would intervene in the visitation to help Mother. Salinas stated that some months she could not communicate with the parents, or the parents were not available to visit Eric. Salinas' last visits with the parents were in May of 2022, despite Salinas offering additional opportunities for the parents to visit with Eric.

According to Salinas, Father completed several requirements of his family service plan, but he failed to complete other requirements. Father failed to provide proof of employment, failed to complete recommendations of his alcohol assessment, and he failed to provide proof of stable housing. She described visits

between Father and Eric as "fine[,]" and noted Father was able to calm Eric down. But Salinas stated that Father only attended two visits with Eric. Salinas testified that Father would randomly reach out to her for additional visits, and when she would arrange the visitation, Father would not respond to any further communication. Both Mother and Father blamed employment responsibilities or lack of transportation for visits with Eric.

During the case, Salinas presented each parent with copies of their positive drug tests. According to Salinas, "[t]hey were surprised, and then [the parents] said, 'That was the last time we've used.'" She took that as an admission of drug use from the parents.

Salinas stated that Mother's and Father's rights to their other children were terminated. She testified that Eric has been in only one foster home during this entire case, and his foster parents wish to adopt him. Eric meets with his biological siblings on a regular basis and keeps a connection with them. She believes it is in Eric's best interest for the parents' rights to be terminated.

### 3. Michael Quinn

Michael Quinn stated that he is the CASA supervisor and advocate for this case. He stated that Eric's siblings were already in the Department's care when Eric was removed from his parents. He has visited Eric at his foster home and believes Eric is doing "very, very well." Quinn testified he has no concerns about Eric in

7

foster care. According to Quinn, the foster parents are meeting the emotional needs of Eric and want to adopt him. Eric is "tightly bonded" with his foster parents and foster siblings, and their home is "his home."

Quinn testified he has never visited the parents' home although he made monthly requests to the parents to facilitate a visit. He was also not aware of the parents ever requesting visitation with Eric. According to Quinn, Mother attended about "10 percent" of the visitation made available to her. Quinn stated Eric was not bonded with the parents and described their visitations with Eric as follows:

> [Eric] was inconsolable during the visits. Commonly I would pick him up -- excuse me -- I would collect him at the back door of the CPS office, and he cried throughout from the time he left his foster parents until he was returned to them. [] The father was able to console him once. The mother never.

Quinn testified that although both parents had completed several requirements of their service plan, they were missing psychological assessments, they had failed to demonstrate safe and stable housing, and they had some positive drug tests. Quinn confirmed the parents' most recent drug test in April was positive for methamphetamine. According to Quinn, Mother did not provide CASA with any documentation regarding her inpatient drug treatment program. Quinn testified that Father has not maintained consistent contact with CASA, and Father failed to provide documentation of his employment. Quinn's biggest concerns for the parents

8

are their drug use and lack of stable housing. He believes the best interest of Eric is to terminate the parents' rights and for Eric's foster family to adopt him.

No other witnesses testified at trial. Drug tests were admitted at trial showing Mother and Father testing positive for drugs during the course of this case. At the conclusion of the trial, the trial court found that it had statutory grounds under §§ 161.001(b)(1)(E), (M), (N), and (O) to terminate Mother's rights, and it found it had grounds to summarily terminate Father's rights under, 161.002(b)(1). The trial court also found that termination was in Eric's best interest. Tex. Fam. Code. Ann. § 161.001(b)(2). Mother and Father appealed.

## II. Ineffective Assistance of Counsel

In Mother's first issue, she challenges the trial court's decision to name the Department temporary managing conservator of Eric, and questions whether that decision was related to ineffective assistance of counsel by Mother's trial attorney. Specifically, Mother argues that her trial counsel was ineffective because the Department could not have met its burden under the Family Code to appoint the Department temporary managing conservator of Eric. According to Mother, "[she] and her attorney simply agreed to the appointment of the Department as managing conservator instead of proceeding with the adversary hearing and requiring the Department to meet the burden required by Section 262.201—the only provision in the law at the time for the Department to be appointed as temporary managing

9

conservator." She argues that the evidence shows that the Department could not have met its burden under Section 262.201, because Section 262.201(g) requires that the Court return the child to the parent at the conclusion of the adversary hearing unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution there was danger to the physical health and safety of the child, an urgent need for protection of the child requiring immediate removal, and reasonable efforts had been made to return the child home, but the child faced substantial risk if returned home.

A parent who cannot afford to retain counsel in Texas parental-termination cases has a right to an appointed attorney who provides effective assistance. *In re D.T.*, 625 S.W.3d 62, 69-70 (Tex. 2021); *In re M.S.,* 115 S.W.3d 534, 544 (Tex. 2003); *see also* Tex. Fam. Code Ann. § 107.013(a). Ineffective-assistance-of-counsel claims in parental-termination cases, as in criminal cases, are governed by the United States Supreme Court's two-prong test articulated in *Strickland v. Washington*. *In re M.S.*, 115 S.W.3d at 544-45 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). First, the parent must show that counsel's performance was deficient. *Id.* at 545. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. Second, the parent must show that the deficient performance prejudiced the case.

*Id*. This requires showing that counsel's errors were so serious as to deprive the party of a fair trial—a trial whose result is reliable. *Id*.

In examining counsel's performance under the first prong, "we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner." *Id*. (quoting *Strickland*, 466 U.S. at 687). Counsel's performance falls below acceptable levels only when the "'representation is so grossly deficient as to render proceedings fundamentally unfair[.]'" *Id*. (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). We give great deference to counsel's choices and indulge "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id*. (quoting *Strickland*, 466 U.S. at 689). The challenged conduct will constitute ineffective assistance only when "'the conduct was so outrageous that no competent attorney would have engaged in it[.]'" *Id*. (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

In conducting the harm analysis under the second prong of *Strickland*, reviewing courts must determine whether there is a reasonable probability that, but for the deficient performance, the result of the proceeding would be different. *Id*. at 549-50. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, a parent

must also show that "counsel's 'deficient performance prejudiced the defense[.]'" *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *Strickland*, 466 U.S. at 687).

An allegation of ineffective assistance of counsel in a termination proceeding must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness and the resulting harm. *In re L.G.R.*, 498 S.W.3d 195, 209 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We may not speculate and find trial counsel ineffective when the record is silent regarding counsel's reasons for his actions. *In re Z.M.R.*, 562 S.W.3d 783, 794 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Mother bears the burden of demonstrating a reasonable probability that her parental rights would not have been terminated if not for her trial counsel's conduct. *See In re V.V.*, 349 S.W.3d 548, 559-61 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

Mother did not file a Motion for New Trial or other evidence showing the basis for counsel's reasoning for not objecting to naming the Department temporary managing conservator of Eric. Additionally, Mother admits she agreed with counsel to allow the Department to become Eric's temporary managing conservator. Because the record is silent as to the reasons for counsel's conduct, we will not speculate to find counsel's performance deficient. *See In re Z.M.*R., 562 S.W.3d at 793-95; *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Without evidence about strategic

12

reasons for counsel's behavior, Mother fails to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See In re M.S.*, 115 S.W.3d at 545; *see also Strickland*, 466 U.S. at 689.

Even if Mother had met *Strickland's* first prong, we conclude she has also failed to show that, but for counsel's alleged errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. As set forth in our analysis below, the trial court had sufficient evidence in the record to support its findings under section 161.001(b)(1)(E) and to support the trial court's finding that termination of Mother's parental rights was in the child's best interest. We overrule Mother's first issue.

### III. Motion for Continuance

In her second issue, Mother complains that the trial court erred in denying her motion for continuance. This case was originally set for final trial on July 27, 2022. Per the trial court judge, at the July 27, 2022 hearing, the case was reset to September 7, 2022, to allow Mother to complete services from her family service plan. At the September 7th trial, Mother sought a second continuance of her case. In an oral motion for continuance, Mother's attorney told the trial court that Mother had transportation issues that day, had a new caseworker on her case which had caused trouble communicating with the Department, and that Mother had recently completed a 30-day inpatient program, and as a result, needs "a little more time to

get her services done[.]" The trial court noted that Mother did not appear at the initial permanency hearing in February 2022, did not appear at the initial final trial setting in July 2022, and did not appear at the final trial set for September 2022. The trial court denied the motion, stating it did not have legal grounds to extend the case past "statutory deadlines."

We review a trial court's denial of a motion for continuance in a termination of parental rights case for an abuse of discretion. *In re E.L.T.*, 93 S.W.3d 372, 374 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *In re H.R.*, 87 S.W.3d 691, 701 (Tex. App.—San Antonio 2002, no pet.). A trial court shall not grant a motion for continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251; *In re H.R.*, 87 S.W.3d at 701.

## A. Additional Time to Complete Service Plan

In her brief, Mother brings our attention to her request for additional time to complete her service plan. Mother sought a continuance on the ground that she needed additional time to complete her service plan. It is not sufficient cause to simply assert that a parent needs more time to complete a family service plan when the parent has had sufficient opportunity to perform the service plan but failed to do so. *In re J.D.L.R.*, No. 04–11–00774–CV, 2012 WL 1364988, at *1 (Tex. App.—San Antonio Apr.18, 2012, no pet.) (mem. op.); *see also* Tex. R. Civ. P. 251; *In re H.R.,* 87 S.W.3d at 701. Appellant cites her 30-day inpatient rehabilitation treatment,

14

arguing it necessitated allowing Mother more time to complete her service plan. Mother had almost a year to complete her service plan. The Department developed a family service plan for Mother in October 2021 and final trial commenced in September 2022. The evidence in the record shows that although Mother completed portions of her family service plan, she failed to complete all of the requirements of her plan. The evidence in the record establishes that even after the court granted her initial continuance, she failed to take any actions in furtherance of her service plan, and she failed to appear for numerous hearings and she failed to appear at trial.

We cannot say the trial court erred in denying Mother another continuance. Mother failed to demonstrate sufficient cause for the trial court to grant her motion. We overrule Mother's second issue.

### IV. Statutory Grounds for Termination

Next, Mother and Father challenge the statutory grounds for termination, arguing the evidence is legally and factually insufficient to support termination under section 161.002(b)(1) of the Texas Family Code and that termination is in Eric's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1); (2).

**A. Section E**

Because the trial court terminated Mother's parental rights under section 161.001(b)(1)(E), as to Mother, we begin our review with section E. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). Under a legal sufficiency review, we review all the

15

evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*.

Under a factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id*. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

The decision to terminate parental rights must be supported by clear and convincing evidence, i.e., "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations

16

sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (citation omitted). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *see also In re J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best interest finding is also supported by legally and factually sufficient evidence. *In re C.A.C., Jr.,* No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.). However, when, as here, a parent challenges a trial court's findings under section 161.001(b)(1)(D) or (E), we must review the sufficiency of those grounds as a matter of due process and due course of law. *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

For purposes of subsection (E), endangerment means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *Id*. at 234; *In re M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). Termination under subsection (E) must be based on more than a single act or omission and requires a voluntary, deliberate, and conscious course of conduct by the parent. *In re M.L.L.,* 573 S.W.3d at 363-64. A parent's conduct that subjects a child's life to instability and uncertainty endangers the emotional or physical well-being of a child. *Id*. at 363. Endangerment is not limited to actions directed toward the child and

17

includes the parent's actions before the child's birth and while the parent had custody of older children, including evidence of drug usage. *In re J.O.A*., 283 S.W.3d at 345.

Courts may consider whether a parent's drug use continues after the child is removed from the parent's care, as such conduct shows a voluntary, deliberate, and conscious course of conduct that endangers a child's well-being. *See In re J.S.*, 584 S.W.3d 622, 635 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see also In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied). The trial court may infer from a parent's refusal to submit to drug testing that they are using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied). "A parent's efforts to improve or enhance parenting skills are relevant in determining whether a parent's conduct results in endangerment under subsection E." *In re S.R.*, 452 S.W.3d 351, 362 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citation omitted).

### 1. Mother

For Mother, the trial court heard evidence that when Eric was removed, Mother was already under investigation with the Department for her other children. The Department had concerns about Mother's drug use, and throughout this case, Mother had positive drug tests for both methamphetamine and marijuana. Mother also did not regularly visit Eric, and it was noted that Mother was unable to console him during her limited visitations. In addition, her last visitation was four months

18

before trial, resulting in witness testimony that she did not have a bond with Eric. There was also evidence that, although she completed portions of her family service plan, she did not follow up with her psychological evaluation, maintain regular contact with the Department, provide proof of consistent employment, and did not provide information that she had a safe and stable home.

We conclude Mother committed the predicate acts enumerated in section 161.001(b)(1)(E). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *In re C.A.C., Jr.,* 2011 WL 1744139, at *1. Having concluded that the evidence was legally and factually sufficient to support the trial court's findings as to subsection 161.001(b)(1)(E), we need not address Mother's challenges regarding the trial court's findings under sections 161.001(b)(1)(M), (N), and (O). *See In re N.G.,* 577 S.W.3d at 235; *In re C.A.C., Jr.,* 2011 WL 1744139, at *5; *see also* Tex. R. App. P. 47.1 We overrule Mother's third, fourth, and fifth issues on appeal.

## 2. Father

In his first issue, Father challenges the trial court's order terminating his parental rights to Eric based on section 161.002(b)(1). *See* Tex. Fam. Code Ann. § 161.002(b)(1). Texas Family Code Section 161.002 is titled "Termination of the Rights of an Alleged Biological Father," and subpart (b)(1) provides in relevant part:

> (b) The rights of an alleged father may be terminated if:
> (1) after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160.

19

Subsection 161.002(b)(1) allows a trial court to summarily terminate the rights of an alleged biological father who does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160. *In re A.D.,* No. 04-02-00310- CV, 2002 WL 31829510, at *1 (Tex. App.—San Antonio Dec.18, 2002, no pet.). However, if the alleged father does file an admission of paternity or a counterclaim for paternity, then the State must "meet the high burden of proof found in section 161.001" and establish one of the grounds outlined therein to terminate the rights of the alleged father. *Phillips v. Tex. Dep't of Protective & Regulatory Servs.,* 25 S.W.3d 348, 357 (Tex. App.—Austin 2000, no pet.). If the alleged father does not file such an admission or counterclaim, then subsection (b) permits the trial court to summarily terminate his parental rights without TDPRS having to meet the high burden of proof found in section 161.001. *Id.* If a trial court erroneously terminates an alleged father's parental rights after he sufficiently admits paternity, reversal and remand for a new trial to require TDFPS to meet its burden of proof under Section 161.001 is the appropriate remedy. *See In re E.O.,* 595 S.W.3d 858, 865 (Tex. App.—El Paso 2020, no pet.) (citing *In re C.M.C.,* 273 S.W.3d 862, 883 (Tex. App.—Houston [14th Dist.] 2008, no pet.) on reh'g)); *Phillips,* 25 S.W.3d at 357.

Father admits that he did not file a formal acknowledgment of paternity or counter petition for paternity. If an alleged biological father does not file a document

20

with the court, he may nevertheless be found to have admitted paternity by appearing at trial, asserting that he was the child's father, and asking the trial court not to terminate his parental rights. *See Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 105 (Tex. App.—Houston [1st Dist.] 2006, no pet). In support of his argument, Father directs our attention to testimony by the caseworker and CASA that Father was the parent of Eric, that Father acknowledged at a family group conference that he had a son, worked services to get his son back, and that Father would visit Eric.

Although he appeared with his court-appointed attorney at the temporary orders hearing, Father did not appear at trial. His counsel argued at trial that Father's parental rights should not be terminated on the grounds asserted and that termination of Father's parental rights would not be in the child's best interest. In its final, appealable order, the trial court found by clear and convincing evidence that Father, after being served with citation in the suit "did not respond [to citation in this suit] by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit[.]" *See* Tex. Fam. Code Ann. § 161.002(b)(2).

As stated above, Father acknowledged he did not file a written statement of paternity. However, Father's attorney signed an Agreed Temporary Order on behalf

21

of Father which contained the following: "The Court finds that [**FATHER**] is a parent who has responded in opposition to the suit affecting the parent-child relationship;…[.]" This portion of the temporary order constitutes an admission in open court reduced to writing and signed by the trial judge. *See In re M.M.*, No. 02-22-00279-CV, 2023 WL 2178403, *5 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.) (citations omitted) ("A stipulation is 'an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto.' A stipulation is not enforceable unless it is in writing, signed and filed with papers as part of the record, or unless it is made in open court and entered of record."). The temporary order states that Father was present with his attorney and the parties agreed to the temporary order. The manner and means of admitting paternity is not restricted to the filing of an Acknowledgment of Paternity or a pleading claiming paternity, but may be established in various ways. *See generally In re G.A.G.,* No. 04-07-00243-CV, 2007 WL 3355463, at *1-2 (Tex. App.—San Antonio Nov. 14, 2007, no pet.) (mem. op.) (Answer, which stated the respondent was the father, and which was signed by attorney, was an admission of paternity); *In re K.W.*, 138 S.W.3d 420, 429-30 (Tex. App.—Fort Worth 2004, pet. denied) (letters sent by alleged father to Department and court stating he is the father and did not want to relinquish his rights were admissions under section 161.002(b)); *Estes v. Dallas Cty. Child Welfare Unit of Tex. Dep't of Human Servs.*, 773 S.W.2d

800, 801-02 (Tex. App.—Dallas 1989, writ denied) (answer filed by the presumed father was sufficient to constitute an admission of paternity); *see also Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (answer to a summary judgment contained judicial admission) (citing *Houston First Am. Sav. v. Musick*, 650 W.S.2d 764, 767 (Tex. 1983) ("Assertions of fact, not plead in the alternative, in the live *pleadings* of a party are regarded as formal judicial admissions.").

Father did not appear at trial, but he did make admissions in the temporary orders which sufficiently triggered his right to require the Department to prove one of the statutory grounds for termination. *See In re J.L.A.,* No. 04-13-00857-CV, 2014 WL 1831097, *2 (Tex. App.—San Antonio May 7, 2014, no pet.) (mem. op.) (Noting that "by [Father] appearing at trial and admitting that he is the child's father, an alleged father triggers his right to require the Department to prove one of the grounds for termination under section 161.001(1) and that termination is in the best interest of the child."); *In re R.B.*, No. 14-17-00238-CV, 2017 WL 3567905, *9-10 (Tex. App.—Houston [14th Dist.] Aug. 17, 2017, no pet.) (mem. op.); *In re K.R.L.*, No. 01-14-00213-CV, 2014 WL 3843520, *10 (Tex. App.—Houston [1st Dist.] Aug. 5, 2014, no pet.) (mem. op.) (holding no representation of paternity when "Appellant did not file any document in the trial court, did not send a copy of [a] letter to the trial court, and did not testify at trial."). As we have explained, in this

23

case Father stipulated to the Agreed Temporary Order, which contained a finding that he was the parent of the child named in the suit (Eric), that he was opposed to the Department's pleading of which he had been served (seeking, among other things, termination of his parental rights), and which Agreed Temporary Order was signed by Father's attorney. We sustain Father's first issue and remand the case to the trial court for a new trial as to Father.

## B. Best Interest

In Mother's seventh issue and Father's second issue, they challenge the sufficiency of the evidence to support the trial court's best interest finding. Mother argues the evidence is legally and factually insufficient to support the trial court's determination that termination was in Eric's best interest. Trial courts have wide latitude in determining the child's best interest. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). There is a strong presumption that the child's best interest is served by keeping him with his parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (citation omitted); *In re D.R.A.,* 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also* Tex. Fam. Code Ann. § 153.131(b). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

The Family Code outlines factors to be considered in determining whether a parent is willing and able to provide a safe environment for the child. *See id.* §

24

263.307(b). Several other nonexclusive factors may be considered in a best interest analysis, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (characterizing the *Holley* factors as "nonexclusive"). No particular *Holley* factor is controlling, and evidence of one factor may be enough to support a finding that termination is in the child's best interest. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied) ("Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of a child.") (citations omitted); *see also In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

We may consider circumstantial evidence, subjective factors, and the totality of the evidence in our best interest analysis. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). A parent's past conduct is relevant to

determining the parent's present and future ability to care for a child. *See In re C.H.*, 89 S.W.3d at 28. Evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. *See id*.

As we have explained, the evidence shows that Eric was removed from Mother's custody due to an open investigation with her other children, concerns about drug use, and the stability of her home. Evidence admitted at trial showed Mother had multiple positive drug tests for marijuana and methamphetamines. Witnesses testified that while Mother completed portions of her family service plan, she failed to maintain contact with the Department, maintain stable housing, appear for drug testing, and provide proof of employment. Mother failed to attend consistent visitation with Eric; her last visitation was four months before trial, and testimony demonstrated that she did not have a bond with Eric during visitation. Both the caseworker and CASA testified that Eric would be crying during visitation and Mother would not be able to calm him. CASA described visitation with Eric and his parents as "tragic[.]" Both Department caseworkers and CASA believed it was in Eric's best interest to terminate Mother's parent-child relationship.

Finally, testimony demonstrated that Eric was happy in his foster home, he was considered to be a part of the foster parent's family, and his foster parents were

26

meeting all his needs. The foster family wanted to adopt Eric if Mother's and Father's parental rights were terminated.

Considering the evidence related to best interest, deferring to the trial court's determinations on witness credibility, the resolution of conflicts in the evidence, and the weight given to the testimony, we conclude that the statutory and *Holley* factors weigh in favor of the trial court's finding that termination of Mother's parental rights is in Eric's best interest. *See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a), (b); *Holley*, 544 S.W.2d at 371-72. The trial court could have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in Eric's best interest. *See In re C.H.*, 89 S.W.3d at 28. We overrule this issue. We do not reach Father's second issue.

## V. Permanent Managing Conservatorship

In Mother's final issue, she challenges the trial court's determination to appoint the Department as Eric's permanent managing conservator.[4] Mother argues that evidence at trial is insufficient to support termination of her parental rights and

---

[4] Father did not challenge the court's order appointing the Department the permanent managing conservator of Eric. *See In re N.T.*, 474 S.W.3d 465, 480 (Tex. App.—Dallas 2015, no pet.) ("In cases where a trial court's termination of the parent-child relationship is reversed, a parent is required to independently challenge a trial court's finding under section 153.131(a) to obtain reversal of the conservatorship appointment. *See In re J.A.J.*, 243 S.W.3d 611, 616-17 (Tex. 2007); *In re A.S.,* 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

therefore the trial court erred when it appointed the Department permanent managing conservator of Eric.

Conservatorship determinations are subject to review for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). We will reverse the trial court's appointment of a managing conservator only if we determine it was arbitrary or unreasonable. *Id*.; *In re N.T.,* 474 S.W.3d 465, 479 (Tex. App.—Dallas 2015, no pet.). The Family Code creates a rebuttable presumption that a parent will be named the child's managing conservator unless that court finds that such appointment would not be in his best interest "because the appointment would significantly impair the child's physical health or emotional development[.]" Tex. Fam. Code Ann. § 153.131(a). This finding was made by the trial court in this case. As discussed above, we affirm the trial court's order terminating Mother's parental rights.

When the parents' rights have been terminated, Family Code section 161.207(a) governs the appointment of a managing conservator. *See id*. § 161.207(a); *In re N.T*., 474 S.W.3d at 480-81. Section 161.207(a) provides, "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code Ann. § 161.207(a). However, we have concluded that only Mother's rights were terminated. We cannot conclude,

28

as to Mother, that the trial court abused its discretion by appointing the Department as the child's managing conservator. *See In re J.A.J.*, 243 S.W.3d at 616; *In re N.T.*, 474 S.W.3d at 480-81. We overrule Mother's last issue.

## VI. Conclusion

Having overruled all of Mother's issues on appeal, the order terminating Mother's parental rights to Eric is affirmed. Having found error in the trial court's reliance upon section 161.002(b)(2), and no finding as to one of the statutory grounds for termination, the evidence is insufficient to support the order terminating Father's rights. We reverse and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

_____
JAY WRIGHT
Justice

Submitted on February 1, 2023
Opinion Delivered April 13, 2023

Before Golemon, C.J., Johnson and Wright, JJ.

29